# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| IBRIHAM KISWANI, | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) 05 C 4559 |
| PHOENIX SECURITY AGENCY, INC.; | ) |
| MARCELINO RENTARIA, individually and as agent | ) |
| of PHOENIX SECURITY AGENCY, INC.; | ) Judge John W. Darrah |
| OFFICER AARON CUNNINGHAM; | ) |
| OFFICER ANGEL CAHUE; OFFICER DOE No.1; | ) |
| OFFICER DOE No. 2; and the CITY OF CHICAGO, | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Ibriham Kiswani, filed suit, against Defendants, alleging civil conspiracy against the City of Chicago (Count 1), civil conspiracy against Officer Angel Cahue (Count II), civil conspiracy against Marcelino Rentaria (Count III), malicious prosecution against Rentaria (Count IV), malicious prosecution against Phoenix Security Agency (Count V), malicious prosecution against the City (Count VI), malicious prosecution against Aaron Cunningham (Count VII), false arrest against the City (Count VIII), false arrest against Rentaria (Count IX), false arrest against Phoenix (Count X), violation of due process against the City (Count XI), liability against the City pursuant to 634 ILCS 10/9-102 (Count XII), and deprivation of property against the City (Count XIII). Currently before the Court is the City's Motion to Dismiss Counts I, VI, VIII, XI, and XIII and Plaintiff's Motion to Strike Affirmative Defenses From the Answer of Defendants Phoenix Security Agency and Rentaria.

## BACKGROUND

A reading of Plaintiff's First Amended Complaint supports the following summary of the alleged conduct of the parties.

On July 17, 1997, Abdul Kiswani, Plaintiff's brother, and James Travis incorporated Phoenix Security Agency. From that date and into 2003, Plaintiff was employed by Phoenix. On December 1, 2001, Phoenix was subject to involuntary dissolution. At all times after this involuntary dissolution, Phoenix continued operating as if dissolution had not occurred.

On June 9, 2003, without Plaintiff's knowledge, Travis reincorporated Phoenix, using the same name but excluding Abdul. Sometime in 2003, Travis terminated Plaintiff's and Abdul's employment with Phoenix. At that time, Travis falsely accused Plaintiff and Abdul of stealing from Phoenix.

On April 5, 2002, Plaintiff filed articles of incorporation for "501 Kedzie Corporation." The purpose of 501 Kedzie was to own and operate a nightclub/bar at 2501 South Kedzie, Chicago, Illinois. The name of the nightclub was "Faran Nightclub." On September 9, 2003, the City issued licenses to 501 Kedzie. These licenses permitted the sale of alcohol for consumption on the premises. The licenses identify Plaintiff as the President of 501 Kedzie. The licenses were renewed and given an expiration date of August 15, 2005.

In July 2004, Plaintiff was employed by National Security Agency, a business providing security services to commercial, residential, and industrial clients. Plaintiff is currently the President of National. In July 2004, Plaintiff was in possession of a valid Firearm Owner Identification Card and a valid security contractor's license, which authorized him to carry a weapon.

2

Approximately three weeks prior to July 29, 2004, Rentaria expressed to Leon Davilo his desire to have Plaintiff arrested. Rentaria told Davilo that he had some friends from his neighborhood that were Chicago Police Officers and that they were going to assist him in setting up Plaintiff for arrest. Rentaria is a Chicago Police Officer and a personal friend of Officer Cahue.

On or about July 28, 2004, a Phoenix employee was arrested by the Chicago Police Department at a McDonald's at the intersection of Warren and Western Avenue. The Phoenix employee, who did not have a card or any other documentation enabling him to lawfully carry a weapon, was arrested for carrying a concealed weapon without a permit. Travis and Phoenix mistakenly believed that Plaintiff had alerted the City of this violation.

Prior to July 31, 2004, Officer Cahue repeatedly entered Faran Nightclub at the request of Travis or Rentaria to arrest or harass Plaintiff for unknown violations. Plaintiff was not present during these visits.

On July 31, 2004, Plaintiff was scheduled to work as a licensed security guard from 10:00 p.m. to 4:00 a.m. the following morning at Hilliard Towers at 2030 South Street, Chicago, Illinois. Plaintiff was required to be armed. Shortly before 9:00 p.m., Plaintiff received a phone call from Amelia Lopex, a bar manager at Faran. Lopez told Plaintiff that she would be arriving at work soon so Plaintiff could report to work at Hilliard Towers. In preparation for his security assignment, Plaintiff went to his office at Faran and put on his weapon, handcuffs, uniform, and ammunition magazines.

At some point in the evening of July 31, 2004, Rentaria telephoned Officer Cahue to alert Officer Cahue that Plaintiff had arrived at Faran. After speaking with Rentaria, Officer Cahue telephoned Officer Cunningham, who was off duty. Officer Cahue informed Officer Cunningham

3

that Plaintiff was at Faran and that Rentaria was waiting on the corner to identify Plaintiff. Officer Cunningham proceeded to Faran and met Rentaria outside the nightclub. After meeting with Rentaria, Cunningham went to the door of Faran where Plaintiff was seated in a chair on the doorstep. Cunningham approached Plaintiff and told Plaintiff that he was under arrest. Plaintiff surrendered his weapon, which he was authorized to carry, without incident.

As part of his investigation, Officer Cunningham entered Faran to check the liquor license. Officer Cunningham was presented with a valid license that identified Plaintiff as President and Secretary of the license. Officer Doe No. 1 signed an arrest report, giving approval to a finding of probable cause. Officer Doe No. 2 signed the arrest report, approving charges against Plaintiff. Officers Doe No.1 and Doe No. 2 are employed by the City. Officer Cunningham also searched Plaintiff's vehicle and removed a ring from Plaintiff's vehicle without Plaintiff's permission.

Following his arrest, several Defendants presented false statements in support of a finding of probable cause for the arrest and detention of Plaintiff. On March 10, 2005, the criminal case against Plaintiff was terminated in Plaintiff's favor.

Subsequently, Plaintiff filed the instant suit. In their Answer to Plaintiff's Second Amended Complaint, Phoenix and Rentaria, raised the following affirmative defenses:

> 1. That Plaintiff's complaint fails to state a cause of action for civil conspiracy, malicious prosecution, and false arrest.
>
> 2. Punitive damages are not recoverable for the state law claims of civil conspiracy, malicious prosecution, and false arrest.
>
> 3. Plaintiff's request for punitive damages would deprive defendants of due process of law in violation of the Fifth and Fourteenth Amendments of the United States Constitution in that: (a) Liability for punitive damages would not be proven beyond a reasonable doubt

or at least by clear and convincing evidence; (b) An award of punitive damages is disproportionate to actual damages.

4. Any award of punitive damages would constitute an excessive fine violation of the Eighth Amendment's prohibition of excessive fines and penalties.

5. Any injuries of damages claimed by the Plaintiff against Defendants were caused, in whole or in part, by his negligent, willful and wanton conduct. Even if Defendants are found liable in damages, the total amount of damages to which the Plaintiff would otherwise be entitled must be reduced by the application of principles of comparative fault in proportion to the amount of willful, wanton, intentional and negligent conduct of the Plaintiff that was the proximate cause of his alleged injuries.

6. Plaintiff failed to mitigate his damages.

## ANALYSIS

### Motion to Dismiss

In reviewing a motion to dismiss, the court reviews all allegations in the complaint and any inferences reasonably drawn therefrom in the light most favorable to the plaintiff. *Marshall-Mosby v. Corporate Receivables, Inc.*, 205 F.3d 323, 326 (7th Cir. 2000). A plaintiff is not required to plead the facts or the elements of a claim, with the exceptions found in Federal Rules of Civil Procedure 9. *See Swierkiewicz v. Sorema*, 534 U.S. 506, 511 (2002) (*Swierkiewicz*); *Walker v. Thompson*, 288 F.3d 761, 764 (7th Cir. 2002). A filing under the Federal Rule of Civil Procedure need not contain all the facts that will be necessary to prevail. It should be "short and plain," and it suffices if it notifies the defendant of the principal events. *See Hoskins v. Poelstra*, 320 F.3d 761, 764 (7th Cir. 2003). Dismissal is warranted only if "it appears beyond a doubt that the plaintiff can prove no set of facts in support of its claims that would entitle it to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The "suit should not be dismissed if it is possible to hypothesize the facts,

consistent with the complaint, that would make out a claim." *Graehling v. Village of Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995). The simplified notice pleading relies upon liberal discovery and summary of motions to define disputed issues and facts and to dispose of unmeritorious claims. *See Swierkiewicz*, 534 U.S. at 513.

The City argues that Plaintiff's Section 1983 claims – Counts I, VI, VIII, XI, and XIII – should be dismissed because Plaintiff failed to plead a custom, policy practice as required by *Monell v. Department of Social Serv.*, 436 U.S. 658, 692 (1978) (*Monell*).

A local governmental entity is liable for damages under Section 1983 only if a plaintiff can show that the alleged constitutional deprivation occurred as a result of an official policy, custom, or practice. *See Monell*, 436 U.S. at 692. Unconstitutional policies or customs generally take three forms: (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a usage or custom with the force of law; or (3) a constitutional injury was caused by a person with final policy-making authority. *Brokaw v. Mercer County*, 235 F.3d 1000, 1013 (7th Cir.2000). A municipality may also be found liable under Section 1983 if the municipality fails to provide adequate training where this failure to train amounts to a deliberate indifference to the rights of the persons with whom the police come into contact. *See City of Canton v. Harris*, 489 U.S. 378, 388 (1989); *Dunn v. City of Elgin*, 347 F.3d 641, 646 (7th Cir. 2003); *Atchinson v. District of Columbia*, 73 F.3d 418, 423 (D.C. 1996).

Here, Plaintiff's Second Amended Complaint alleges that the City failed to adequately train, supervise or control the police officers named in the Complaint, resulting in the injuries to Plaintiff. The City claims that a municipality must be the "moving force" directly causing the alleged injury

before the municipality may be held liable. *See Hulbert v. Wilhelm*, 120 F.3d 648, 656 (7th Cir. 1997). However, ultimate liability of the City is not now the issue. Plaintiff sufficiently pleads a Section 1983 cause of action to withstand dismissal at this stage of the proceedings. *See Swierkiewicz*, 534 U.S. at 511 (plaintiff need not plead facts or elements of the claim); *Johnson v. Sheahan*, 2005 WL 2739183 (N.D. Ill. Oct. 24, 2005) (denying dismissal of Section 1983 claim for failure to plead *Monell* elements).

Based on the above, the City's Motion to Dismiss is denied.

## Motion to Strike Affirmative Defenses

Federal Rule of Civil Procedure 8(c) requires a party to set forth affirmative defenses in a responsive pleading. Fed. R. Civ. P. 8(c). Under Rule 12(f), "the court may order stricken from any pleading any insufficient defense." Fed. R. Civ. P. 12(f). Generally, motions to strike affirmative defenses are disfavored because they potentially serve only to cause delay. *See Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989) (*Heller*). Such motions are generally granted only when the affirmative defenses are "patently defective and could not succeed under any circumstances." *Mobey v. Kelly Kean Nissan, Inc.*, 864 F.Supp. 726, 732 (N.D.Ill. 1993). Affirmative defenses, as pleadings, are subject to the pleading requirements of the Federal Rules of Civil Procedure. *See Heller*, 883 F.2d at 1294.

Defendants' first affirmative defense is a recitation of the standard for a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). While the Federal Rules of Civil Procedure allow

7

liberal pleadings, they do not allow a claimant to merely recite the standard for a motion to dismiss under Rule 12(b)(6). *See Murphy v. White Hen Pantry Co.*, 691 F.2d 350, 353 (7th Cir. 1982); *Renalds v. S.R.G. Restaurant Group*, 119 F. Supp. 2d 800, 803-04 (N.D. Ill. 2000). Accordingly, the first affirmative defense is stricken.

Defendants' second through fourth affirmative defenses allege that punitive damages are not recoverable. Assertions that punitive damages are not recoverable or constitutional do not constitute affirmative defenses under Section 8(c). Accordingly, Defendants' second, third, and fourth affirmative defenses are stricken.

Defendants' fifth affirmative defense alleges that Plaintiff's injuries were caused in whole or in part by Plaintiff's own negligence, or Plaintiff's own willful and wanton conduct. Contributory negligence is an affirmative defense identified in Rule 8(c), and Plaintiff has alleged state law claims against these Defendants. Accordingly, the motion to strike Defendants' fifth affirmative defense is denied.

Defendants' sixth affirmative defense alleges that Plaintiff failed to mitigate his damages. The defense of failure to mitigate damages is not limited to contractual claims. *See Fleming v. County of Kane*, 898 F.2d 553, 560 (7th Cir. 1990). Accordingly, the motion to strike Defendants' sixth affirmative defense is denied.

## CONCLUSION

For the foregoing reasons, the City's Motion to Dismiss is denied. Plaintiff's Motion to Strike Affirmative Defenses From the Answer of Defendants Phoenix Security and Rentaria is granted in part and denied in part. Defendants' affirmative defenses one through four are stricken.

Dated: February 22, 2006

JOHN W. DARRAH
United States District Court Judge