# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **IBRIHAM KISWANI,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | |
| ) | |
| **PHOENIX SECURITY AGENCY, INC.;** ) | **Case No. 05 C 4559** |
| **MARCELINO RENTERIA, individually** ) | |
| **and as agent of PHOENIX SECURITY** ) | |
| **AGENCY, INC.; OFFICER AARON** ) | **Magistrate Judge Morton Denlow** |
| **CUNNINGHAM, individually; OFFICER** ) | |
| **ANGEL CAHUE, individually; CAPTAIN** ) | |
| **FRED T. KONET, individually; LT.** ) | |
| **EDWARD FLYNN, individually; OFFICER** ) | |
| **JAMES MCKITTRICK, individually;** ) | |
| **OFFICER LUIS RAMIREZ, individually;** ) | |
| **and THE CITY OF CHICAGO, an Illinois** ) | |
| **Municipal corporation,** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Ibriham Kiswani ("Plaintiff") has filed a twenty-two-count second amended complaint[1] against the various defendants. At issue before the Court are the claims against Defendant Phoenix Security Agency, Inc. ("Phoenix") and Defendant Marcelino Renteria

---

[1]Dkt. 22 (Nov. 7, 2005). This is Plaintiff's second amended complaint, although it is entitled "Plaintiff's Amended Complaint." The counts in Plaintiff's second amended complaint are misnumbered (e.g. there are two Count XI's, two Count XII's, and two Count XIV's). The Court finds twenty-two actual counts included in Plaintiff's second amended complaint. All of the counts brought against Defendant Phoenix Security Agency, Inc. and Defendant Marcelino Renteria are raised in this motion.

("Renteria") (collectively, "Defendants"). Count IV alleges civil conspiracy against Renteria. Counts V and VI allege malicious prosecution against Renteria and Phoenix, respectively. Counts XI and XII allege false arrest against Renteria and Phoenix, respectively. Currently before the Court is Defendants' motion for summary judgment to dismiss Counts IV-VI, and Counts XI-XII. Defendants have also brought a motion to strike Plaintiff's Rule 56.1(b)(3)(C) Statement of Additional Facts. For the following reasons, the Court grants in part and denies in part Defendants' motion to strike, and grants Defendants' motion for summary judgment

## I. DEFENDANTS' MOTION TO STRIKE PLAINTIFF'S RULE 56.1(b)(3)(C) STATEMENT OF ADDITIONAL FACTS

In addition to responding to Plaintiff's Rule 56.1(b)(3)(C) Statement of Additional Facts ("Plaintiff's Statement" or "Statement") as required by Local Rule 56.1, Defendants have filed a motion to strike Plaintiff's Statement in its entirety. In the alternative, Defendants argue that nine of the 19 paragraphs that Plaintiff includes in his Statement should be stricken.

**A.    Local Rule 56.1**

The Northern District has promulgated Local Rules 56.1(a) and 56.1(b) to delineate the parties' obligations in summary judgment proceedings, and the court has broad discretion to enforce these rules. *Malec v. Sanford,* 191 F.R.D. 581, 583 (N.D. Ill. 2000) (also stating that "the Court of Appeals for the Seventh Circuit regularly upholds strict enforcement of

2

Local Rule 56.1").[2] Rule 56.1(a)(3) requires the movant to submit a statement of undisputed material facts that entitle him to judgment as a matter of law. *Id.;* N.D. Ill. L.R. 56.1(a). The nonmovant must respond to the movant's statement of facts, and may also submit a statement of additional facts. *Malec,* 191 F.R.D. at 583; N.D. Ill. L.R. 56.1(b). If a nonmovant fails to properly respond to a movant's 56.1(a) statement, the movant's factual allegations are deemed admitted. *Malec,* 191 F.R.D. at 584.

The requirements for the nonmovant's statement of additional facts under Rule 56.1(b)(3)(C) are the same as that of the movant's statement of facts under Rule 56.1(a)(3). *Id.* The nonmovant's "statement of additional facts must set forth material facts that require the denial of summary judgment, supported by specific references to the record." *Id.;* N.D. Ill. L.R. 56.1(b)(3)(C). The statement must contain only factual allegations, supported by specific references to exact pieces of the record that support the factual contention contained in the paragraph. *Malec,* 191 F.R.D. at 584. Such references must "include page (or paragraph) numbers, as opposed to simply citing an entire deposition, affidavit, or other exhibit document." *Id.* ("District Courts are not obliged . . . to scour the record looking for factual disputes;" "Factual allegations not properly supported by citation to the record are nullities."). Moreover, any "documents submitted with a motion that are not referred to in the statement of facts will be ignored." *Id.*

---

[2]This Court uses *Malec* as "a vehicle to inform lawyers appearing before this Court what precisely we expect from summary judgment practitioners." *Malec,* 191 F.R.D. at 582.

A nonmovant may use innumerable types of evidentiary material to support a statement of facts, however the most common include affidavits, deposition transcripts and business documents. *Id.* Any allegations supported by personal knowledge only, however, must be supported by affidavit. *Id.* Additionally, the evidence supporting the allegations must represent admissible evidence. *Id.* at 585 ("a hearsay statement made during a deposition does not constitute adequate evidentiary support for a factual proposition").

**B.      Plaintiff's Statement Should Not be Stricken in its Entirety.**

Defendants argue that Plaintiff's Statement does not comply with the requirements of Local Rule 56.1(b)(3)(C). Defendants assert that Plaintiff's Statement should be stricken in its entirety because the supporting materials for Plaintiff's Statement are not attached to the Statement but rather are attached to Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment. Although Defendants' assertion is correct, Rule 56.1 does not require the supporting materials to specifically be attached to the Statement. Plaintiff is only required to provide such materials, and to do so in a way that does not require the Court to "scour the record looking for factual disputes." *Id.* at 583. Plaintiff has cited to specific page and paragraph numbers as required by Local Rule 56.1, and has indicated in his Statement the document to which the supporting materials are attached. Although the Court finds that Rule 56.1 anticipates the parties will attach their supporting materials directly to their Statements, and the Court advises parties to do so, because the Court can still easily find the supporting materials to which Plaintiff refers, it will not strike Plaintiff's statement because of this technicality.

**C.     Paragraphs 1, 3 - 7, and 16 - 17 of Plaintiff's Statement should not be stricken, but Paragraph 8 should be stricken.**

Defendants also argue that several of Plaintiff's paragraphs are not supported by the proper evidence as is required by Rule 56.1. Defendants argue that Paragraphs 3 thru 7 are only supported by documents containing copies of licenses, and not by affidavit or deposition testimony, and thus are not supported by the proper evidence. As stated above, although affidavits and deposition testimony are the most common types of evidentiary material used, nonmovants are not limited to these types of material when providing support for their factual allegations. To support the allegations contained in Paragraphs 3 thru 7, Plaintiff provides photocopies of various licenses and cards referenced in the allegations. The photocopies support the existence and validity of the licenses and cards. Although additional evidence may be required at trial to further demonstrate the validity of the licenses and cards, such as Plaintiff's testimony, such testimony is not required here as the photocopies sufficiently support his assertion for the purpose of a motion for summary judgment. Thus, Paragraphs 3 thru 7 of Plaintiff's Statement should not be stricken.

Defendants also argue that Paragraph 8 should be stricken because it is based on speculation and hearsay. Paragraph 8 states that "[b]etween July 24, 2004 and July 31, 2004, a[n] employee of Phoenix Security Agency was arrested for not having the proper documentation to carry a firearm." To support the allegation contained in this paragraph, Plaintiff cites to pages 144 and 145 of Plaintiff's deposition, where Plaintiff discusses his knowledge of the arrest, and his conversation with an individual about the arrest. Plaintiff

5

does not, however, cite to any police records or other documentation supporting this fact. Without any additional evidence of this arrest beyond Plaintiff's deposition testimony, this allegation is based on hearsay and speculation, and thus is not adequate evidentiary support for this proposition. Thus, the Court grants Defendants' motion to strike Paragraph 8.

Finally, Defendants argue that Paragraphs 16 and 17 should be stricken because they are based on an illegible and unauthenticated document, and that Paragraph 1 should be stricken because it is also based on an unauthenticated document. To support the allegations contained in Paragraphs 16 and 17, Plaintiff cites to Exhibit E, which contain photocopies of the licenses referred to in the paragraphs. Although the Court acknowledges that the photocopies are difficult to read, they are sufficiently legible to provide the required support under Rule 56.1. Although Plaintiff will be required to lay the proper foundation and to properly authenticate all of the documents cited to in Paragraphs 1, 16 and 17 to admit them into evidence at trial, he is not required to do so for the purposes of this motion.[3] Thus, Paragraphs 1, 16, and 17 of Plaintiff's Statement should not be stricken. Accordingly, the Court grants in part and denies in part Defendants' motion to strike Plaintiff's 56(b)(3)(c) Statement.

## II. BACKGROUND FACTS

---

[3]Both licenses referred to in Paragraphs 16 and 17 appear to have the word "void" written repeatedly on them, and at least one license appears to be expired. Viewing the facts in the light most favorable to the plaintiff, assuming that the Faran Night Club still uses these licenses, the Court accepts these materials as supporting Plaintiff's factual allegations for the purpose of this motion.

The following facts are undisputed or presented in the light most favorable to Plaintiff when contested.

A.  **Relationship between the Parties**

Phoenix, an Illinois corporation, was incorporated by James Travis in 1997, and voluntarily dissolved on November 1, 2004. DSOF ¶ 1, 56.[4] While in business, Phoenix was hired to provide security services at the Faran Night Club ("Night Club" or "Club"), formerly known as Mario's Ballroom. DSOF ¶ 15, 16. This agreement was a continuation of its agreement to provide the same security services at Mario's Ballroom. DSOF ¶ 18. Plaintiff was employed by Phoenix from December 1998 to July 2003. DSOF ¶ 3. The tavern license and the tobacco license used at the Night Club both listed Plaintiff as the registered licensee. PSOAF ¶ 16-17; Pl. App. Ex. E; DR Ex. D at 76-80.

Maggie Lopez was the manager of both Mario's Ballroom and the Night Club. DSOF ¶ 17. Renteria was employed by Phoenix as a security officer at the Night Club in 2004. DSOF ¶ 2. Plaintiff never told Renteria where he was going before he left the Night Club, his work schedule at Hilliard Towers, or where he was going when he traveled back and forth between the Towers and the Night Club. DSOF ¶ 43-44, 46. Plaintiff traveled back and forth between the Towers and the Night Club while carrying his handgun. DSOF ¶ 45.

---

[4] Citations to the record are in the following form: Defendants' 56.1(a) Statement of Uncontested Facts is cited as DSOF ¶ __; Plaintiff's 56.1(a) Statement of Additional Facts is cited as PSOAF ¶ __; Plaintiff's Re-Filed Response to Defendants' 56.1(a) Statement of Additional Facts is cited as PR ¶ __; Defendants' Response to Plaintiff's 56.1(a) Statement of Additional Facts is cited as DR ¶__; and Plaintiff's Appendix of Exhibits in Opposition to Defendants' Motion for Summary Judgment is cited as Pl. App. Ex. __.

Prior to July 31, 2004, Plaintiff was present at the Night Club regularly, and Renteria was hostile to Plaintiff. PSOAF ¶ 13; Pl. App. Ex. H at 61, 86. On July 30, 2004, Renteria and Plaintiff were in a physical confrontation. PSOAF ¶ 14.

**B.     Events Prior to the Day of Plaintiff's Arrest**

On some day prior to July 31, 2004, Renteria waived down Officer Cahue and his partner near the Night Club. DSOF ¶ 7. Renteria told Officer Cahue an individual was present in the area with a gun. DSOF ¶ 9. Officer Cahue and his partner canvassed the area for the individual, and then returned to where Renteria flagged him down. DSOF ¶ 11. When he returned, Officer Cahue recognized Renteria as a former neighbor of his sister. DSOF ¶ 8, 11-12. Officer Cahue gave Renteria his cell phone number and told him to call it or 911 if the man with the gun returned. DSOF ¶ 14. Renteria intended to have Plaintiff arrested if he again carried a gun into the Club. PSOAF ¶ 19; DR Ex. D at 77, 159. Officer Cahue and Renteria are not friends, and Plaintiff admits he has no information which suggests or shows that Renteria is a personal friend of Officer Cahue. DSOF ¶ 13, 48.

**C.     The Day of Plaintiff's Arrest**

Officers Cunningham and Ramirez were on duty as Chicago Police Officers on July 31, 2004. DSOF ¶ 4-5. Officer Cahue was off duty that day. DSOF ¶ 6. Plaintiff was present at the Night Club on that day and was carrying a handgun. DSOF ¶ 19. Renteria was working for Phoenix as a security officer at the Night Club on that day and observed Plaintiff with a handgun outside the Club. DSOF ¶ 20, 21. Without mentioning Plaintiff by name, Renteria called Officer Cahue's private cell phone and notified him that an individual was

present at the Night Club with a weapon and intimidating the employees. DSOF ¶ 22, 24; PSOAF ¶ 9. Officer Cahue passed this information onto Officer Cunningham at approximately 9:00 p.m., and then proceeded to the Night Club with Officer Ramirez. DSOF ¶ 23, 26, 53.

Renteria pointed Plaintiff out to Officer Cunningham, who then approached Plaintiff with Officer Ramirez, recovered the firearm and then conducted an investigation. DSOF ¶ 27-28, 37; Pl. App. Ex. H2 at 127 - 139. Plaintiff produced several identification cards, and possessed an expired firearm identification card. DSOF ¶ 29-30. Plaintiff also had a valid firearm owner's identification card, a valid firearms authorization card, a valid security contractor's license, a valid permanent employee registration card, and a valid identification card indicating he was a security agent for National Security Agency. PSOAF ¶ 3 - 7; Pl. App. Ex. D; DR Ex. A, B, & C. Plaintiff told Officer Cunningham that he worked at the Night Club, but Amalia Lopez told Officer Cunningham that Plaintiff no longer had a business relationship with the Night Club. DSOF ¶ 31, 33.

Plaintiff admits he has no information which suggests or shows that Renteria knew Plaintiff was an owner of the Night Club. DSOF ¶ 49. Renteria did not believe Plaintiff was ever the owner of the Night Club, or that he was working anywhere as a security officer in July 2004. DSOF ¶ 51-52. However, Renteria did have knowledge that the liquor license used at the Night Club was in Plaintiff's name, and that Plaintiff performed managerial duties at the Night Club. PSOAF ¶ 10, 12; Pl. App. Ex. H at 47. Renteria also knew that Plaintiff had keys to the Night Club and was one of two people who knew the combination to the safe

9

kept at the Night Club. PSOAF ¶ 11.

Officers Cunningham and Ramirez told Plaintiff their investigation revealed he was not an employee of the Night Club. DSOF ¶ 47. After conducting an investigation at the scene, Officer Cunningham and Officer Ramirez obtained information to believe that they had probable cause to arrest Plaintiff. DSOF ¶ 32, 34-35; Pl. App. Ex. H2 at 127-139. Renteria never instructed the officers to arrest Plaintiff, nor did he sign the complaint or direct or pressure the officers to swear a complaint against Plaintiff. DSOF ¶ 36, 38-39. Renteria also never discussed wrongfully arresting Plaintiff with Officers Cahue, Cunningham or Ramirez, and Plaintiff admits he has no information which suggests or shows that Renteria spoke to any of the arresting officers prior to the date of the arrest. DSOF ¶ 40, 50. James Travis also never instructed Renteria to arrest Plaintiff, nor did he ever meet or speak to Officers Cahue, Cunningham or Ramirez prior to July 31, 2004. DSOF ¶ 41.

**D.    The Charges Filed Against Plaintiff and the Current Litigation**

On July 31, 2004, Plaintiff was arrested and charged with aggravated unlawful use of a weapon. PSOAF ¶ 1. On March 10, 2005, he was acquitted of this charge. PSOAF ¶ 2. Plaintiff has now filed a second amended complaint against several Defendants, including Phoenix and Renteria, alleging civil conspiracy, malicious prosecution and false arrest. Defendants Phoenix and Renteria have filed a motion for summary judgment on these counts.

### III.  LEGAL STANDARD

A court may grant summary judgment when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there

is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(C). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty lobby,* 477 U.S. 242, 255 (1986). The movant bears the burden of establishing that there exists no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986); *Hedberg v. Indiana Bell. Tel. Co.,* 47 F.3d 928, 931 (7th Cir. 1995). The party bearing the burden of proof on an issue at trial may not rest on the pleadings, however, but must "designate specific facts showing that there is a genuine issue for trial." *Celotex,* 477 U.S. at 324. The evidence is viewed in the light most favorable to the non-movant and "all justifiable inferences are to be drawn in his favor." *Anderson,* 477 U.S. at 255.

## IV. DISCUSSION

### A.  Count IV: Civil Conspiracy Against Renteria

Plaintiff alleges that Renteria is liable to him for civil conspiracy. Defendants assert that Plaintiff is unable to establish the required elements for this claim. The Court agrees with Defendants.

In order for a court to find a defendant guilty of civil conspiracy under Illinois law, a plaintiff must demonstrate "1) an agreement, 2) by two or more persons, 3) to perform an overt act or acts, 4) in furtherance of the agreement, 5) to accomplish an unlawful purpose or a lawful purpose by an unlawful means, and 6) that causes injury to another." *Bressner v. Ambroziak,* 379 F.3d 478, 485 (7th Cir. 2004) (citing Illinois law). The overt act or acts

must be tortious or unlawful acts. *Id.* at 483.

Plaintiff is unable to produce any evidence establishing an agreement between Renteria and the alleged co-conspirators to falsely arrest him, as is required by the first element of civil conspiracy. Although evidence exists establishing that Renteria spoke with Officer Cahue before July 31, 2004 regarding the presence of a man with a gun, nothing about this conversation establishes that Renteria and Officer Cahue agreed to falsely arrest Plaintiff, or to even contemplate such an action. DSOF ¶ 7-14. Plaintiff has also failed to present any other evidence of such an agreement between Renteria and the arresting officers.[5] Although Renteria pointed Plaintiff out to the officers, he made no agreement with the officers to falsely arrest Plaintiff. DSOF ¶ 27.

Plaintiff argues this element is met because evidence exists regarding the hostile and confrontational relationship between Plaintiff and Renteria. However, even if Plaintiff could establish that Renteria was motivated to have Plaintiff falsely arrested, he has failed to establish that Renteria actually entered into an agreement with someone else to have him falsely arrested. Moreover, Plaintiff admits that Renteria never discussed wrongfully arresting Plaintiff with Officers Cahue, Cunningham or Ramirez. DSOF ¶ 40; PR (admitting Paragraph 40 of Defendants' Rule 56.1 Statement of Facts by failing to respond to it). Thus, because Plaintiff has failed to establish any facts that an actual agreement was entered into

---

[5]Although Plaintiff relies on a particular fact to support his contention that circumstantial evidence exists that an agreement was formed, Plaintiff has failed to include this fact in his 56.1(b)(3)(C) Statement of Additional Facts. Because this fact also does not appear in Defendants' 56.1(a) Statement of Facts, it is not a part of the record for the purposes of this motion, and thus the Court will not consider it.

by Renteria, his civil conspiracy claim against Renteria must be dismissed because no reasonable jury could find for the Plaintiff. Thus, as to Count IV, the Court grants Defendants' motion for summary judgment.

**B.      Counts V and VI: Malicious Prosecution Against Phoenix and Renteria**

Defendants also argue that a reasonable jury could not find that Phoenix and Renteria are liable to Plaintiff for malicious prosecution. In order to prevail on a malicious prosecution claim under Illinois law, a plaintiff must establish "1) the commencement or continuance of an original or civil judicial proceeding by the defendant; 2) the termination of the proceeding in favor of the plaintiff; 3) the absence of probable cause for such proceeding; 4) the presence of malice; and 5) damages." *Logan v. Caterpillar, Inc.,* 246 F.3d 912, 921-22 (7th Cir. 2000) (citing *Swick v. Liautaud,* 662 N.E.2d 1238, 1242 (Ill. 1996)). A plaintiff does not satisfy the first element merely by showing that a private citizen reported information to the police, even if that information later turns out to be incorrect. *Id.* at 922 (citing *Randall v. Lemke,* 726 N.E.2d 183, 185 (Ill. App. Ct. 2000)). Rather, a plaintiff must demonstrate that the defendant "1) instituted the proceedings against the plaintiff, 2) knowingly made false statements to the police, or 3) requested, directed, or pressured the officer into swearing out the complaint for the plaintiff's arrest." *Id.* (citing *Geisberger v. Vella,* 379 N.E.2d 947, 949 (Ill. App. Ct. 1978)). The citizen must take some official action to "commence a prosecution" - he does not do so by merely giving false information to the proper authorities. *Randall,* 726 N.E.3d at 185.

Defendants argue that Plaintiff has failed to produce any evidence that Renteria or

13

Phoenix pressured, directed, or even asked the police officers to arrest Plaintiff. Plaintiff has put forth evidence demonstrating that Renteria pointed Plaintiff out to Officer Cunningham. DSOF ¶ 27. However, Plaintiff admits that Renteria never instructed the officers to arrest Plaintiff, and that he did not direct or pressure the officers to swear a complaint against Plaintiff. DSOF ¶ 38-39; PR (admitting Paragraphs 38 and 39 of Defendants' Rule 56.1(a) Statement of Facts by failing to respond to them). He also admits Renteria did not sign the complaint. DSOF ¶ 36; PR (admitting Paragraph 36 of Defendants' Rule 56.1 Statement of Facts by failing to respond to it). On its own, the fact that Renteria pointed Plaintiff out to the officers is insufficient to show that Renteria actually directed, requested or pressured the officers to swear a complaint against him. *See Randall,* 726 N.E.2d at 185 ("When a private person gives to a prosecuting officer information that he believes to be true, and the officer in the exercise of his uncontrolled discretion initiates criminal proceedings based upon that information, the informer is not subject to liability for malicious prosecution.").

Moreover, although Plaintiff puts forth evidence demonstrating that Renteria knew about some of Plaintiff's business relationship with the Night Club, he fails to present any facts alleging that Renteria actually gave false information to the police regarding Plaintiff, let alone that he did so knowingly.[6] DSOF ¶ 10,12. Even if Renteria knew of exculpatory information regarding Plaintiff's business relationship with the Night Club that he withheld

---

[6]Although Plaintiff relies on a fact to support his contention that Renteria did knowingly give false information to the officers, Plaintiff has failed to include this fact in his 56.1(b)(3)(C) Statement of Additional Facts. Because this fact also does not appear in Defendants' 56.1(a) Statement of Facts, it is not a part of the record for the purposes of this motion, and thus the Court will not consider it.

14

from the police, he was under no affirmative duty to provide such information. *Logan,* 246 F.3d at 922-23 (referencing cases holding that individuals who provide information to legal authorities [are] not "under an affirmative obligation to report subsequent findings that cast doubt on the original information").

Plaintiff has also failed to bring forth any evidence demonstrating that any other agents of Phoenix are liable to Plaintiff for malicious prosecution. Thus, because no reasonable jury could find that Renteria or Phoenix are liable to Plaintiff for malicious prosecution, the Court grants Defendants' motion for summary judgment as to Counts V and VI.

### C. Counts XI and XII: False Arrest Against Phoenix and Renteria

Under Illinois law, to prevail on a false arrest claim, a plaintiff must prove he "was restrained or arrested by the defendant and [that] the defendant acted without having reasonable grounds to believe that an offense was committed by the plaintiff." *Meerbrey v. Marshall Field and Co., Inc.,* 564 N.E.2d 1222, 1231 (Ill. 1990). When a police officer makes a false arrest, a plaintiff may recover against a private defendant who supplied information to that police officer if he can establish that the defendant "1) directed the officer to arrest the plaintiff or 2) procured the arrest by giving information that was the sole basis for the arrest." *Randall,* 726 N.E.2d at 186.

Although Plaintiff cites several facts to support his argument that Renteria directed the officers to arrest Plaintiff, he has failed to include all of these facts in the record to support his contention. Moreover, as previously discussed, Plaintiff admits that Renteria did

15

not instruct the officers to arrest Plaintiff and that he did not direct or pressure the officers to swear a complaint against him. DSOF ¶ 38-39; PR (admitting paragraphs 38 and 39 of Defendants' Statement of Facts by failing to respond to them). Thus, because of Plaintiff's admissions, no reasonable jury could find that Renteria directed the officers to arrest Plaintiff.

Renteria did give information to the officers that led to his arrest, by telling them that an individual was at the Night Club with a gun and pointing Plaintiff out to the officers. DSOF ¶ 22, 27. The facts do not indicate, however, that this information was the sole basis for the arrest. The officers conducted an investigation after speaking with Renteria, and although Renteria may have been present during this investigation, Plaintiff admits they did find a gun on his person. DSOF ¶ 28; PR (admitting paragraph 28 of Defendants' Statement of Facts by failing to respond to it). He also does not dispute that Renteria did not know Plaintiff was the owner of the Night Club, or that the Officers told him they conducted an investigation that revealed he was not an employee of the Night Club. DSOF ¶ 47, 49; PR (admitting paragraphs 47 and 49 of Defendants' Statement of Facts by failing to respond to them). Thus, although Renteria did tell the officers that Plaintiff had a gun, even if they received little additional information after investigating, this piece of information was not the sole basis for their arrest. *See Randall,* 726 N.E.2d at 186 ("Unless the information is the sole basis for the arrest, an informer's mere conveyance of information to the police does not support a claim of false imprisonment.").

Similarly, no facts exist to demonstrate that Phoenix is liable to Plaintiff for false

16

arrest. Thus, for the reasons stated above, because no reasonable jury could find that Renteria or Phoenix is liable to Plaintiff for false arrest, Defendants' motion for summary judgment as to Counts XI and XII are granted.

## V. CONCLUSION

For the reasons set forth in this opinion, **the Court grants the motion by Defendants Phoenix Security Agency, Inc. and Marcelino Renteria for summary judgment to dismiss Counts IV - VI and XI - XII of Plaintiff's second amended complaint. The Court also grants in part and denies in part Defendants' motion to strike Plaintiff's 56(b)(3)(C) Statement.**

**SO ORDERED THIS 2nd DAY OF JANUARY, 2008.**

*Morton Denlow*

_____
**MORTON DENLOW
UNITED STATES MAGISTRATE JUDGE**

**Copies sent to:**

John Thomas Moran  
The Moran Law Group  
309 West Washington Street  
Suite 900  
Chicago, IL 60606  

Counsel for Plaintiff  

Erron Fisher  
Sussman, Selig & Ross  
One E. Wacker Drive  
Suite 3650  
Chicago, IL 60601  

Counsel for Plaintiff  

Patrick John Ruberry  
Dowd & Dowd, Ltd.  
617 West Fulton  
Chicago, IL 60661  

Counsel for Defendant (Phoenix and Renteria)  

Matthew R. Link  
Attorney at Law  
617 West Fulton Street  
Chicago, IL 60661  

Counsel for Defendant (Phoenix and Renteria)  

Jonathan Clark Green  
Chicago Corporation Counsel  
Suite 1400  
30 North LaSalle Street  
Chicago, IL 60602-2580  

Counsel for Defendant (Officers Cunningham, Cahue, Flynn, Konet, McKendrick and Ramirez)  

Diane S. Cohen  
City of Chicago, Law Department  
Corporation Counsel  
30 North LaSalle, Suite 1020  
Chicago, IL 60602  

Counsel for Defendant (The City of Chicago)