## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| **IBRIHAM KISWANI,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **PHOENIX SECURITY AGENCY, INC.;** | ) | **Case No. 05 C 4559** |
| **MARCELINO RENTERIA, individually** | ) | |
| **and as agent of PHOENIX SECURITY** | ) | |
| **AGENCY, INC.; OFFICER AARON** | ) | **Magistrate Judge Morton Denlow** |
| **CUNNINGHAM, individually; OFFICER** | ) | |
| **ANGEL CAHUE, individually; CAPTAIN** | ) | |
| **FRED T. KONET, individually; LT.** | ) | |
| **EDWARD FLYNN, individually; OFFICER** | ) | |
| **JAMES MCKITTRICK, individually;** | ) | |
| **OFFICER LUIS RAMIREZ, individually;** | ) | |
| **and THE CITY OF CHICAGO, an Illinois** | ) | |
| **Municipal corporation,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

This case comes before the Court on a motion *in limine* filed by Chicago Police

Officers Aaron Cunningham, Angel Cahue, Fred T. Konet, Edward Flynn, James McKittrick

and Luis Ramirez (collectively "Officer Defendants"). The motion seeks to exclude evidence

regarding the following four categories of economic damages from the upcoming trial: 1) lost

mortgage finance business; 2) lost hotel deals; 3) lost CTA security deal; and 4) repossessed

vehicles[1]. This Court held oral arguments on November 29, 2007. For the reasons stated below, the Court grants the Officer Defendants' motion *in limine* as to all four categories of economic damages.

## I. BACKGROUND FACTS

**A.    Events Leading to Plaintiff's Arrest**

Chicago Police arrested Ibriham Kiswani ("Plaintiff") on July 31, 2004, for aggravated use of a weapon. On August 20, 2004, a state court judge found probable cause for the arrest. Plaintiff was acquitted of the charge on March 10, 2005 following a criminal trial. He thereafter instituted this action. None of the Officer Defendants knew Plaintiff prior to his arrest, and none had any knowledge of the specific business activities which form the basis of the four categories of damages.

Plaintiff filed a second amended complaint alleging counts of §1983 civil conspiracy, malicious prosecution, false arrest, §1983 due process violations and deprivation of property/theft against the Officer Defendants, former business associate Marcelino Renteria ("Renteria"), and Phoenix Security Agency, Inc. ("Phoenix"), and a claim under 745 ILCS 10/9-102[2] against the City of Chicago.

---

[1]The motion in limine is not directed to the following items of damages claimed by Plaintiff: 1) the loss of an engagement ring from his vehicle; 2) legal fees in defending the criminal charge; and 3) pain, suffering and humiliation he suffered from his arrest. See Def. Mot. Ex. A in which Plaintiff identifies and itemizes seven categories of damages.

[2]745 ILCS 10/9-102 states, "a local public entity is empowered and directed to pay any tort judgment or settlement for compensatory damages (and may pay any associated attorney's fees and costs) for which it or an employee while acting within the scope of his employment is liable." 745 Ill. Comp. Stat. 10/9-102 (2002).

Beginning on April 5, 2002, and at all times relevant to this motion, Plaintiff was the President of 501 Kedzie Corporation, which owned and operated Faran Nightclub, located at 2501 South Kedzie, Chicago, Illinois. Plaintiff was also the President and an employee of National Security Agency ("NSA"), an Illinois corporation whose primary business is providing security services to commercial, residential, and industrial clients.

On the night of the arrest, July 31, 2004, Plaintiff was scheduled to work as an armed security guard for Hilliard Towers, located at 2030 South State Street, Chicago, Illinois, starting at 10:00 p.m. At approximately 9:00 p.m., Plaintiff was armed and seated at the doorstep outside Faran Nightclub. Chicago Police Officers subsequently approached Plaintiff and arrested him for aggravated use of a weapon. On August 20, 2004, a probable cause hearing was held at which time a finding of probable cause for the arrest and detention of Plaintiff was made. Plaintiff was acquitted of criminal charges on March 10, 2005 following a trial.

**B.     Four Categories of Economic Damages Sought to be Barred.**

Plaintiff claims four categories of economic damages resulting from his arrest and prosecution which the Officer Defendants seek to bar in their motion *in limine*.

**1.     Lost Mortgage Finance Business**

Plaintiff planned to start a mortgage banking business ("Illinois Mortgage Exchange") with investor Mike Raymond. The company expected profits of over $300,000. Illinois Mortgage Exchange was incorporated in May 2004, but never obtained a license or conducted any business and is now dissolved. (Kiswani Dep. 106-7; 157-8).

### 2. Lost Hotel Deals

Through Illinois Mortgage Exchange, Plaintiff planned to enter into two hotel deals valued at $105,000,000. Plaintiff claims that his uncle, Said Halawa, intended to financially back the first deal, and that investor John Burgelman agreed to financially back a second hotel deal after the first was completed. (Kiswani Dep. 170-3). Because of Plaintiff's arrest, however, Said Halawa allegedly withdrew funding for the first hotel deal. Consequently, the second hotel deal failed as well.

### 3. Lost CTA Security Deal

Prior to the arrest, Plaintiff's company, NSA, had one client, Holston Management, and two existing contracts with Holston. (Kiswani Dep. 95). Plaintiff expected to obtain additional contracts to provide security services, most notably, one with the Chicago Transit Authority ("CTA") valued at $2,000,000. *Id.* Plaintiff claims to have underbid competitors for the CTA contract. *Id.*

### 4. Repossessed Vehicles

Plaintiff also claims that he was unable to maintain payments for multiple vehicles he owned because of financial hardships after the arrest. Plaintiff's 2003 Hummer, 2004 Yamaha Wave-Runner, 2005 Cadillac Escalade, and 2004 Chevrolet Trailblazer, valued at an estimated total of $190,000, were all repossessed.

The Officer Defendants have filed a motion *in limine* to exclude these four categories of economic damages for three primary reasons: (1) the damages are overly speculative because establishing causation relies on too many contingencies; (2) the damages are barred

by the new business rule; and (3) the economic loss doctrine bars recovery for purely economic damages in §1983 claims. This Court will discuss the applicable legal standards and then apply them to the four categories of damages presented.

## II. LEGAL STANDARDS

### A.    Motions *in limine*

A motion *in limine* is a request for the court's guidance concerning an evidentiary question. *Wilson v. Williams*, 182 F.3d 562, 570 (7th Cir. 1999). The Court may give such guidance by issuing a preliminary ruling regarding admissibility. *Id.* Trial judges are authorized to rule on motions *in limine* pursuant to their authority to manage trials, even though such rulings are not explicitly authorized by the Federal Rules of Evidence. *Luce v. U.S.*, 469 U.S. 38, 41 n.4 (1984). Judges have broad discretion when ruling on motions *in limine*. *Jenkins v. Chrysler Motor Corp.,* 316 F.3d 663, 664 (7th Cir. 2002). In order to exclude evidence on a motion *in limine*, however, the evidence must be inadmissible on all potential grounds. *Townsend v. Benya*, 287 F.Supp.2d, 868, 872 (N.D. Ill. 2003). Otherwise, rulings must be deferred to the time of trial so that questions of foundation, relevancy, and potential prejudice may be resolved. *Id.* A ruling on a motion *in limine* is not necessarily final. *Id.* Trial judges may alter prior *"in limine* rulings, within the bounds of sound judicial discretion." *Id.*

**B.  Damages Under 42 U.S.C. § 1983**

42 U.S.C. § 1983 "create[s] a species of tort liability in favor of persons who are deprived of rights, privileges, or immunities secured to them."  *Carey v. Piphus*, 435 U.S. 247, 253 (1978).  Therefore, when a § 1983 plaintiff seeks damages for violations of constitutional rights, the level of damages is generally determined in accordance with principles derived from the common law of torts as a matter of federal common law. *Memphis Comm. Sch. Dist. v. Stachura*, 477 U.S. 299, 306 (1986); *Graham v. Satkoski*, 51 F.3d 710, 713 (7th Cir. 1995).  The basic purpose of a § 1983 damage award should be to compensate a plaintiff for injuries caused by the deprivation of constitutional rights.  *Carey*, 435 U.S. at 254.  The rules governing compensation for such injuries "should be tailored to the interests protected by the particular right in question."  *Id*. at 259.

The Seventh Circuit Pattern Jury Instructions for compensatory damages in § 1983 cases provides in relevant part:

> Plaintiff must prove his damages by a preponderance of the evidence.  Your award must be based on evidence and not speculation or guesswork.  This does not mean, however, that compensatory damages are restricted to actual loss of money; they include both the physical and mental aspects of injury, even if they are not easy to measure.

Federal Civil Jury Instruction of the Seventh Circuit § 7.23 (2005).  Accordingly, presumed damages are not available; actual damages must be proved.  *Carey,* 435 U.S. at 264.

The issue of proximate cause may also be considered with the issue of damages because without proximate cause there is no liability.  In *Martinez v. State of California*, 444 U.S. 277 (1980), the Supreme Court affirmed the dismissal of a § 1983 claim brought by the survivors of a 15-year old girl who was murdered by a parolee.  Her survivors brought an

action "claiming that the state officials responsible for the parole-release decision are liable in damages for the harm caused by the parolee" five months after his release. *Martinez,* 444 U.S. at 279. The Supreme Court held that the independent act of the parolee did not constitute state action and that her life had been taken by the parolee and not the parole board. *Id.* at 284-85.

The Seventh Circuit has applied similar principles in excluding evidence of damages where legal causation did not exist. In *Hibma v. Odegaard*, 769 F.2d 1147 (7th Cir. 1985), the plaintiff brought a § 1983 action claiming that the defendants entrapped him and caused him to be framed and wrongfully sent to prison. After the jury had determined liability, and before the damage phase of the trial, the trial court granted a motion *in limine* to exclude evidence of a sexual assault upon the plaintiff while in prison. *Hibma,* 769 F.2d at 1154-55. The Seventh Circuit affirmed the exclusion of this evidence on the issue of damages based on the trial court's conclusion that the evidence was irrelevant, because the assault took place after the duty to protect the plaintiff had shifted from the defendants to the Wisconsin Prison System. *Id.* at 1156-57. Although the defendants' actions set in motion events which led to the plaintiff's confinement in prison, the duty of protection assumed by the Wisconsin Prison System and the inmates' criminal assault formed superseding causes which prevented the defendants from being a legal cause in bringing about the assault. *Id*. at 1156.

Similar principles were more recently set forth in *Gauger v. Hendle*, 349 F.3d 354 (7th Cir. 2003). In *Gauger*, the plaintiff brought a § 1983 action claiming that the defendants had framed him in connection with his parents' murder. *Gauger,* 349 F.3d at 356. In vacating and remanding the grant of summary judgment on the false arrest portion of the case, the

court held that the plaintiff was entitled to all damages that are a foreseeable consequence of the false arrest. *Id*. at 362. The Court noted, however, that the plaintiff was not entitled to all of the damages that resulted from the train of events set in motion by the arrest. *Id*. Rather, damages for the false arrest claim are limited to the harm incurred from the false arrest before he was charged. *Id*. at 363 (stating that "the interest in not being prosecuted groundlessly is not an interest that the Fourth Amendment protects").

Generally, to recover damages, a tort plaintiff must establish more than "but for" causation. *Movitz v. First Nat'l Bank of Chicago*, 148 F.3d 760, 762 (7th Cir. 1998). Even if a plaintiff's loss is a consequence of a defendant's action, it must be a foreseeable consequence of the violation of the defendant's duty. *See Id.* at 763. Although, the Court may extend inferences to find causation, "at some point too many inferences become mere speculation" and damages must be precluded. *Mid-America Tablewares, Inc. v. Mogi Trading Co., Ltd.*, 100 F.3d 1353, 1368 (7th Cir. 1996).

## C.    The New Business Rule

When seeking recovery of lost profits, the "lost profits must be established with reasonable certainty and not be based upon speculation." *Alover Distrib., Inc. v. Kroger, Co.*, 513 F.2d 1137, 1140 (7th Cir. 1975). In such cases, the claimant bears the burden of establishing the lost profits with "reasonable certainty." *TAS Distrib. Co., Inc. v. Cummins Engine Co., Inc.*, 491 F.2d 625, 631-32 (7th Cir. 2007). If a party establishes that it is entitled to damages, but is unable to prove those damages with a reasonable degree of certainty, it may only recover nominal damages awarded at the discretion of the trial judge.

*Id*. at 632.  Because lost profits are prospective in nature and inherently uncertain, it is impossible to calculate them with mathematical precision.  *Id.* at 632-33.  A claimant must nonetheless bring forth evidence which establishes a reasonable basis for computing lost profits.  *Id.* at 633.  A claimant must also show that the damages can be traced to the defendant's wrongful conduct with a reasonable degree of certainty.  *Id.*

Moreover, the "new business rule" typically bars recovery for lost profits of a new business as "too uncertain, specific and remote to permit recovery."  *Id.* at 633.  As a general rule, a new business has no right to recover lost profits because it has yet to demonstrate what its profits will be.  *Id*. at 634; *Stuart Park Assoc. Ltd. Part. v. Ameritech Pension Trust*, 51 F.3d 1319, 1328 (7th Cir. 1995). Thus, lost profits are normally recoverable only when a business was previously established.  *Stuart Park Assoc. Ltd. Part.*, 51 F.3d at 1328. Damages may include lost profits when a business is interrupted, but the business must be in existence prior to the interruption so that the calculation of lost profits is not speculative. *Drs. Sellke & Conlon, Ltd. v. Twin Oaks Realty, Inc.*, 491 N.E.2d 912, 917 (Ill. App. Ct. 1986).  Courts have explained that prior success with a similar business generally does not provide ample information to calculate lost profits for a new business because conditions vary with each business venture.  *TAS Distrib.*, 491 F.3d at 635; *Drs. Sellke & Conlon*, 491 N.E.2d at 917.

## D.    The Economic Loss Doctrine

In addition to the issues of foreseeability, causation and the new business rule, Defendants also claim that Plaintiff's economic damages should be barred by the economic

loss doctrine. Under common law, "purely economic damages are generally not recoverable in tort actions."[3] *In re Illinois Bell Switching Station Litig.*, 641 N.E.2d 440, 443 (Ill. 1994). The United States Supreme Court established the economic loss doctrine in 1927 with *Robins Dry Dock & Repair Co. v. Flint*, 275 U.S. 303 (1927). The Illinois Supreme Court adopted the doctrine in 1982 with *Moorman Mfg. Co. v. Nat'l Tank Co.*, 435 N.E.2d 443 (Ill. 1982).

The economic loss doctrine states that lost profits, without any claim of personal injury or damage to other property, are not recoverable in tort. *See Am. United Logistics Inc. v. Catellus Dev. Corp.*, 319 F.3d 921, 926 (7th Cir. 2003). Because "the economic consequences of any single accident are virtually limitless," the economic loss doctrine is designed to prevent open-ended tort liability. *In re Chicago Flood Litig.*, 680 N.E.2d 265, 274 (Ill. 1997). Thus, contract law is the appropriate remedy for recovering purely economic losses. *In re Illinois Bell Switching*, 641 N.E.2d at 444. Regardless of an inability to recover through contract, however, a plaintiff suffering from defeated commercial expectations is barred from tort recovery when pleading solely economic losses. *Chicago Flood Litig.*, 680 N.E.2d at 275. Defendants have cited no § 1983 cases where the economic loss doctrine was applied and this Court does not find it necessary to do so in this case.

### III. DISCUSSION

---

[3]*See also*, *Audio Odyssey, Ltd. v. U.S.*, 243 F.Supp. 951, 960-61 (S.D. Iowa, 2003) ("American law generally opposes recovery in tort for purely economic loss . . . This per se rule barring recovery for economic loss absent physical injury has evolved in American tort law . . . The application of the economic loss doctrine rests in state tort law.").

This motion *in limine* is directed to four categories of economic damages: (1) lost profits from two proposed hotel deals; (2) lost profits from a planned mortgage finance business, Illinois Mortgage Exchange; (3) lost profits from a potential security contract with the CTA, and (4) damages relating to the repossession of Plaintiff's vehicles.

## A.      Lost Profits From the Two Failed Hotel Deals

The motion in limine seeks to exclude over $105,000,000 in damages relating to two hotel deals which did not proceed following Plaintiff's arrest.  One deal involved the purchase of the Renaissance O'Hare Hotel and another involved the development of a hotel and office complex.  The second hotel deal was contingent upon the success of the first.  After Plaintiff's arrest, however, Said Halawa, the financial backer of the first hotel deal, withdrew his support.  Both hotel deals subsequently fell through.  The deals were later completed with a competitor and Illinois Mortgage Exchange is now dissolved.  This claim for damages is barred because it is speculative, there is no legal causation, it was not foreseeable, and it is barred by the new business rule.

Plaintiff has failed to demonstrate that the hotel deals would have actually gone through had he not been arrested, rendering this claim for damages overly speculative. Plaintiff never signed a contract for either of the hotel deals. Although Plaintiff faxed paperwork to John Burgelman, the hotel owner, who replied that he "liked what he saw," Plaintiff was arrested a week later and all business relations ceased. (Kiswani Dep. 181-2). Even though Plaintiff claims that his uncle backed out of the deal because of Plaintiff's arrest, there was no valid contract or affirmative assurance that Plaintiff was awarded the hotel projects before the arrest; Mr. Burgelman merely entertained business discussions with him.

While Plaintiff was negotiating with John Burgelman, numerous contingencies could have caused the deals to fall through. For instance, Illinois Mortgage Exchange did not, at the time of the arrest, possess a license necessary to execute the hotel deals. (Kiswani Dep. 90:3-22). Illinois Mortgage Exchange could have failed to secure a license, the financial backers could have withdrawn support for the project for other reasons, or Mr. Burgelman could have simply chosen a competitor. It is speculative to conclude that the failure of the hotel deals was a consequence of Plaintiff's arrest. Moreover, losing two incomplete, uncertain hotel deals was also not a foreseeable consequence to Plaintiff's arrest.

In addition, despite the fact that Illinois Mortgage Exchange was incorporated at the time of Plaintiff's arrest, it had yet to realize a profit. Without any realized profits, calculating future profits would be highly speculative, rendering Plaintiff's claim also barred by the new business rule.

## B.    Lost Profits From Illinois Mortgage Exchange

Defendants seek to exclude over $300,000 in damages relating to expected profits of Plaintiff's failed mortgage company.  This claim for damages is also barred because it is speculative, there is no legal causation, it was not foreseeable, and it is barred by the new business rule.

Plaintiff asserts that, just prior to his arrest, he entered into an agreement to pay Mike Raymond $260,000 in anticipation of starting a business with him.  Plaintiff now claims that he owes Mike Raymond $300,000 related to that transaction.  However, Plaintiff never made any attempt to start Illinois Mortgage Exchange after the arrest.  (Kiswani Dep. 279).  Thus, if anything, Plaintiff's inactions appear to have been the cause of his company's profit failure, not his arrest or felony charges.   The arrest was not the legal cause of the company's downfall, and these damages were clearly not foreseeable.

Illinois Mortgage Exchange's lost profits are also overly speculative.   Despite incorporating in May of 2004, Illinois Mortgage Exchange was never granted a license by the State of Illinois and never opened for business.  *Id*.  Thus, it is is not considered a previously established business, as it has yet to earn any profits to demonstrate what its future earnings will be.  *See Stuart Park Assoc. Ltd. Part.,* 51 F.3d at 1328 (finding that the plaintiff's company was not "previously established" as there was no evidence to demonstrate what the plaintiff's business would yield).[4]   The company thus falls within the scope of the new

_____

[4]Plaintiff argues that there is evidence in the record to demonstrate the company's future profits, including a business proposal and his business partner's experience in running  a similar company. A proposal, however, is still based on speculation. *See Drs.*

business rule, also barring Plaintiff from receiving damages under this claim.

## C.     Lost Profits From the CTA Contract

The Officer Defendants seek to exclude lost profits of $2,000,000 resulting from Plaintiff's inability to secure a contract with the CTA. This claim for damages is also barred because it is speculative, there was no legal causation and it was not foreseeable.

Plaintiff claims that the arrest and prosecution caused his company, NSA, to lose a five-year contract for security services with the CTA. The CTA contract was awarded to a competitor, Securitas, in the fall of 2004. In an attempt to secure the CTA contract, Plaintiff placed a bid and submitted paperwork in July of 2004. (Kiswani Dep. 100). However, other companies bid for the contract as well. Plaintiff answered "no" when asked if he knew specifically or had any evidence that the CTA did not accept his bid because of his arrest. (Kiswani Dep. 276). This claim is totally speculative. Plaintiff has put forth no evidence to demonstrate  the arrest and prosecution was the legal cause of his inability to secure this contract, nor has he shown that this was a foreseeable consequence to his arrest and prosecution.

## D.     Damages from the Repossession of Plaintiff's Vehicles

Finally, Plaintiff claims that four of his vehicles were repossessed because he was unable to maintain payments after his arrest barred him from obtaining security work. This claim is barred because it is speculative, there is no legal causation and it was not foreseeable.

_____

*Sellke & Conlon, Ltd.,* 491 N.E.2d at 917 ("lost profits are not a proper element of damages where proof of those profits is based on speculation or conjecture"). Moreover, as previously stated, prior success with a similar business does not provide adequate information to calculate lost profits for a new business. *TAS Distrib.,* 491 F.3d at 635; *Drs. Sellke & Conlon,* 491 N.E.2d at 917.

The fact that Plaintiff could not keep up his car payments is simply too removed from the arrest and prosecution to provide any claim for damages.

### IV. CONCLUSION

For the reasons set forth in this opinion, the Officer Defendants' motion *in limine* to exclude four categories of economic damages is granted.

SO ORDERED THIS 3rd DAY OF JANUARY, 2008.

_____

**MORTON DENLOW**
**UNITED STATES MAGISTRATE JUDGE**

**Copies sent to:**

Counsel for Plaintiff

John Thomas Moran
John T. Moran & Associates
Chicago, IL 60602

Erron Fisher
Sussman, Selig & Ross
One E. Wacker Drive
Suite 3650
Chicago, IL 60601

Counsel for Defendants

Jonathan Clark Green
Assistant Corporation Counsel
30 North LaSalle Street, Suite 1400
Chicago, IL 60602-2580

Patrick John Ruberry
Matthew R. Link
Dowd & Dowd
617 West Fullerton Street
Chicago, IL 60661